v. Harris. Would the lawyers who are going to address us please both stand and say and spell your names for us? I'm going to make a written check for the impeller. R-e-g-e-n-s-h-e-i-t. Thank you. Good afternoon, Your Honors. Assistant State Attorney Ellen Spellberg, S-p-e-l-l-e-r-g-e-n-s-h-e-i-t. Thank you, gentlemen. As you can sit down. As you both know, you each have 20 minutes. Mr. Regenschenk, would you like to reserve some of that for rebuttal? No, no. Okay. Please, you do not need to use your whole 20 minutes, but you are welcome to. Please keep your voices up nice and loud. There are a lot of people here and this microphone does not amplify. Whenever you are ready. Good afternoon. My name is Daniel Regenschenk on behalf of Appellate Eric Hamilton. This afternoon, I'd like to focus my argument primarily on Issue 1, ineffective assistance of counsel raised in the brief. And then if time permits, since the State conceded the substantive error of Issues 2 and 3, we can talk about the evidence being closely balanced. I'm sorry. And you also argue that Issue 2 goes to ineffective assistance as well. Yes, to a certain extent, yes. But essentially in the first point is that it was unreasonable and ineffective for trial counsel to fail to admit the admissible evidence of Hamilton's state of mind in the self-defense case. Defense counsel had a duty to admit admissible evidence that was critical to support the defendant's self-defense claim, which essentially relied on his state of mind at the time of the shooting. A defendant has a right to testify directly to the fact of his state of mind. And that's because essentially in self-defense, it's the defendant's perception of the scenario that is most important, and particularly here for the second degree reasonableness, unreasonableness of the defendant's belief. Counsel, what's the standard of review? The standard of review, I'm raising it as ineffective assistance of counsel, and I would argue Strickland is its own standard of review. So the first prong we have to show unreasonableness, that trial counsel's strategy was unreasonable, and then the second prong is the prejudice prong that, you know, we have substantial reason to doubt the verdict that came out of the case because of counsel's error. Thank you. Counsel, let me ask you. Yes. The defense was self-defense, correct? Correct. And testimony from the defendant was that he saw a gun in the waistband of the victim. Is that right? Yes. Okay. So was there any other testimony that was offered about how he felt when he saw that gun or anything of that nature other than he saw the gun? I don't believe so. The testimony came as he had just described, returning to the scene and stating what he believed was going on. I believe Hamilton is getting out of the car and fumbling with his phone, perhaps he looks up. But I think there was some testimony that he was maybe heated and upset. So what was subjectively in the mind of the defendant when he saw that gun? What do we know about that? We know that he thought he saw a gun. And the other evidence before the jury was that they were just going to fight. No, I understand that. So, again, but the moment he saw the gun, even if – and I don't know because I don't know the complete record, but he didn't testify as to I felt afraid or I was scared or I thought I was going to die or anything like that. I believe, sure, the testimony is coming out in a particular manner. And defense counsel first asked what did you see or what was happening. And he says, I thought he was fixing to shoot me. Okay. And then counsel asked why did you think he was fixing to shoot you, which is essentially the self-defense case. Okay, so there you go. He said, I thought he was going to shoot me. So as far as what we know about his subjective state of mind, he was afraid. We can draw reasonable inference from that that, oh, my goodness, this man thought he was going to be shot, right? Correct. So what would it add to the analysis if he was allowed to answer the question, do you know that he had a gun? He's already at the highest level of apprehension and concern as far as his state of mind is concerned. Correct. How would that other question have assisted? The question goes to the jury's understanding of the reasonableness and unreasonableness of Hamilton's testimony. Because the jury is judging both whether Hamilton's belief is true, because the state's point in closing is he made it up. He knew what the standard was for self-defense. You know, I thought he was going to shoot me. And so he says, I thought he was going to shoot me. And that's all that defense counsel was able to present. And so what it does is it characterizes both the credibility of his belief that he might shoot him, but then also the fact that, you know, there was no gun found, right? And so the question is, why did Hamilton make this mistake? You know, why would he have thought that he saw a gun? And is it because, you know, not only was he afraid and he had come out of this fight, but in addition, he is essentially the brother-in-law of the victim. He knows him very well. What else does Hamilton know about the situation, about the victim, that colors his perception? You know, there's nothing. Did he discover any kind of gun that he ever knew that he ever had or didn't have? I think it depends. Hamilton's response to the question, why did you think he was fixing to shoot you? And the answer was, I knew him to carry. And then that's where the objection begins. And the record points to he was going to say gun. And then counsel then changes his question. We don't know what kind of gun or, you know, maybe, but the point was that he knew him to carry. We don't know what type of a gun. Although he's in this incredible state of mind of being afraid, being shot, which I can understand if you see a gun, this little bit of evidence that you knew that he had some kind of gun would have changed the jury's mind as far as his state of mind. As far as the reasonableness of his belief that he was going to be shot. Because, as we said, we're coming out, the fact, as an ineffectively That's subjective, though, is it not? Are you kind of supposing this could happen, the jury could make its decision? The jury would, the jury did not have any other evidence of Hamilton's knowledge of Johnson. Because Well, again, there was no, none of that Lynch evidence was offered. They didn't have propensity for violence, anything like that was offered. Correct. And that's because the evidence being offered wasn't particularly Lynch evidence. That's what I'm saying. But there was no Lynch evidence. I get it. Potentially for violence in the community. He's known to be a violent person. He's aggressive. None of that was offered. No. And perhaps that goes to the defense counsel's ineffectiveness because the record doesn't get developed on those points. Well, how do you know that existed? The record doesn't present that. Maybe because it doesn't exist. There is an emotional lemonade about gang evidence being excluded. Not saying that that points to or against either way, but the testimony and the evidence that was presented was limited by the trial court, both onto whatever that might have been and then whatever was attempting to come out here. And, again, it's not about whether Johnson was actually reaching for a gun. Let me ask you this. The way I understand your evidence, the evidence that was excluded, you're arguing that it should have been allowed because Johnson, the victim, was known to have carried a gun in the past, and the defendant, knowing that the victim carried a gun, when he saw him reaching for his waistband, he subjectively, his state of mind was that this guy is going to shoot me. Is that your argument? Essentially. Except to the extent that it characterized it as a propensity. I'm not talking about propensity. Sure. That was the argument made by the State, and the defense counsel responded to propensity instead of the nuanced state of mind use of that testimony as opposed to going down the path of propensity. I understood the argument to be more nuanced, which had to do with the state of mind of the defendant at the time that he shot the victim. Is that your argument? Yes. Because the evidence went to state of mind, and as the standard of review is ineffective assistance, what we're asking is, was counsel's non-strategy or counsel's use of a prohibited argument to admit the evidence, was that reasonable? And it wasn't because state of mind was available. Well, he made arguments that suggested that he wanted to argue state of mind, but he never offered the evidence for that purpose, as far as I could tell from the record. Correct. And part of it is discerning from the record the strategy that happened. We see counsel begin in the opening statement, he says, towards the end of his opening argument, should Hamilton have shot Johnson? No. And so that is not a justified self-defense argument. It's a second-degree argument. And so there's an opening statement, you know, doesn't give the jury the – or he gives the jury this confused argument, and then by close, he's saying, oh, no, this was pure self-defense. This was justified. Maybe the gun disappeared. Maybe he shot himself. Maybe who knows what. And then, oh, yeah, maybe it was unreasonable. So what instructions did the jury get in this case? They got a second-degree instruction, and then they got 7.05, the unreasonable use of self-defense. They did? Correct. All right. And so counsel must have known that this essential – that this evidence of Hamilton's state of mind was essential evidence. He tried to get it in. He couldn't figure out how to get it in, and then he quit when he's – when the objection arises, particularly in Hamilton's testimony. He just changes the whole line of questioning. Well, the judge said, no, it's Lynch, right? I believe at that point, no, there are two objections. There's a sidebar for the third-party testimony, Ms. Robinson, and that's where the Lynch discussion develops, and then later, when Eric Hamilton testifies, there's just an objection that's sustained, and then counsel changes the question. I don't want to know what you knew about before now. Just tell me what you saw. What did you see? And that abandons this second-degree argument in the middle of the case. Did he make any effort at an offer of proof for the judge in terms of, here's the evidence I want, and this is what I want it for, so that it would be in the record on that basis? On Hamilton's case – or on Hamilton's statement, no, but I would argue that the record's developed enough there that we know what he's completing the sentence with. In Robinson's case, he asks, did you ever know your brother – or have you ever seen your brother carrying a gun, something to that effect. And that's where the objection comes in, and we get sidetracked with the Lynch argument, and counsel kind of makes this – what he says is – Well, that's where my question goes. When that – when the objection was made at that point, what did counsel – what did defense counsel do? Well, he gives – he gives two arguments. He says, one, Judge, I think I should be allowed to ask this question, which is not a coherent legal argument. And then the second point, he says, well, you know, Judge, I think if, you know, she saw him with a gun in the past, that means that he – you know, there's a reasonable belief he could have had it now, which is the first – Does that go to his subjective state of mind, what she knows? It would – I hesitate to use the word – bolster his testimony, which is criticized by the State. They say he's making it up, that he doesn't know him to carry a gun. But that could never be offered for his state of mind, what she knew about him. It would – her testimony at least supported the underlying fact that perhaps he would have seen or he would have known Johnson to carry a gun. So hers would have come in only if his – the defendant's would have come in. Correct. Counsel should have called Robinson after Hamilton to get her to say what she would have said about her brother because it would have supported Hamilton's, you know, understanding, which, again, we don't – I'm not arguing for the truth of the underlying assertion. It's just that a defendant has a right to testify to his state of mind. Just so I'm clear. So the argument you're saying he should have made as to Robinson is her testimony is going to corroborate what I expect him to testify to, which is that he knew the victim to carry a gun. Yes. She would corroborate that. Yes. And it doesn't go to whether the gun existed because he can't make – there's no legal basis for that position that he's advancing. And so mid-case, counsel gets stuck with this objection and can't get the evidence in, and that guts both, you know, the jury's ability to make a judgment about Hamilton and it cuts down on the argument that counsel's able to make. This is taking you in a completely different direction. So ask your question first. Did the court ever consider the relevance of this? Because was the court considering maybe it would be prejudicial to the defendant and not weigh the probative value? There was no weighting test on the record. But that is just something that could be considered, correct? You say, all right, I've seen him with a gun. Well, how does that talk about your state of mind? That's just a – that's something other than you. Sure. It wouldn't have been prejudicial to the defendant, though. We're not talking about the defendant having a gun. We're talking about the victim having a gun. I mean, the victim. Sure. The victim, of course. And I mean, that's where it gets into this – to the lynch argument. Well, you don't argue a lynch, though. You don't have anything to do with that, right? Right. And because the state – part of the state's argument, which I think the court accepted, was that, you know, this is just to dirty up the victim. But it wasn't he's in a gang. It wasn't he's, you know, threatened people with a gun. It was just the fact that he carried a gun, which is, as was pointed out on the record, we don't know if it was legal or illegal or, you know, what about the gun. There's nothing, you know, unseemly about carrying a gun. If someone is approaching you and you've just had a fight and you think you see a gun and you know the person carries a gun, that's where it has its effect. Well, I think we can agree that if the testimony is being – if the propensity of the defense lawyer is being offered for the interpretation of the testimony, if that's what it was being offered for, then the trial court was correct in keeping that testimony out. But I think your argument is that the trial court never got an opportunity to hear from the defense lawyer that he was offering that testimony for the nuanced interpretation of the defendant's state of mind. Isn't that what you're saying? Correct. The self-defense argument relied on two prompts. One, I thought I saw a gun. Two, I knew that this was a guy that carried a gun. Those are the two only pieces of evidence that Eric Hamilton needed to get in in his defense to make a coherent second-degree argument and to some extent to the first-degree argument that the testimony supported a pure self-defense, which was what counsel ended up ultimately going for. But the jury was deprived of that evidence and that undercut his complete defense. You're out of time, but I have a completely different direction I want to take you in briefly. Yes, Your Honor. In your reply brief, for the first time you mentioned that the autopsy report said – makes clear that he was not shot at close range, which is completely contrary, I think, to Bates' testimony, who was kind of the most serious witness against the defendant. Am I right? There is – you know, the not evidence of, I think, is a tricky one. No, there's no evidence of it being fired at close range. Correct. Right. And Bates' testimony was he stood over him and fired right at him. Right. And then he fired four or five additional shots into the body, which, you know, there's two contemporary bullets and one old oxidized bullet in the body. At the very least, I mean, to the extent that this takes us to the closely balanced test, we've got Hamilton's credible testimony, to whatever extent, that can be judged. And then two other witnesses who both contradict themselves in the motion of the witness or of the victim when he's shot. And then Bates has this other testimony about banging on the car window and yelling, which does not appear in Young's testimony. Young sees the car's part. You haven't let me get to my question. I apologize. My question is, was that ever – I mean, the report's never read to the jury. Was there any mention by defense counsel of that report and the fact that it completely undermines Bates' testimony? Certainly not to that effect. And I don't want to say he didn't say anything about it without double-checking my notebook. Okay. Which I will do. But no, my belief is no and that the focus is entirely on – he does talk about the third bullet, you know, being additional bullets in the body, so there is – And the possibility that the victim shot himself or something. Right. But he does not say you can't believe these witnesses because of that. But I will verify my statement. All right. I wanted to ask that question, so thank you. Okay. Thank you. If there's no further questions, we ask that you remain for a new trial. Good afternoon again, Your Honors. Assistant State Attorney Alan Spalberg. I'd like to begin with the question that Justice Cunningham began my opponent's questions. What is the standard of review here? As counsel stated, he is presenting this case under the rubric of the ineffective assistance of counsel, claiming that the defendant's attorney at trial failed to argue self-defense in the way that appellate counsel now wishes he had and would have offered a slightly different theory to the trial courts and to the jury. But essential in that argument and essential in the question as to what is the standard of review is the fact that the defendant does not challenge the trial judge's ruling regarding the admission of evidence, both in the testimony of Nikita Robinson at cross-examination by defense counsel and in the direct testimony of the defendant. In both cases, the judge exercises discretion as to what the argument is. But if the argument is never made to the judge and the only viable theory is one that's not the judge's fault, obviously, what I'm trying to say, though, is that when the judge was presented with the evidence, with the testimony and the arguments by counsel, the judge made a decision. That decision would normally be reviewed under an abuse of discretion standard. But in this case, it's not even challenged. It's not even contested on appeal as being wrong. And what's important from looking at the record in this case, particularly during the sidebar that occurred during Nikita Robinson's testimony, is that the basis for the judge's ruling was one of relevance in the sense that the evidence that was Can the judge say that? I do believe the judge actually says that at one point. But if I could continue, just what the judge makes clear is that the defense attorney's offer of proof at that point is speculative. It's very remote and uncertain as to when she saw Let's go back to the relevance question. Okay. If the issue of whether or not that testimony is relevant, if the question of presenting this for the nuanced interpretation of the defendant's state of mind, why wouldn't that be relevant? Your Honor, I'm not disputing that had an argument like that been made that the judge may have considered it for relevance purposes. Well, that's his point. The argument should have been made and it wasn't. That's your point. But what I'm trying to say is that the reason why it was rejected, why the judge sustained the objection, was because he reached the conclusion that the testimony that was being offered, the offer of proof, was not sufficiently clear to allow for the admission of evidence because it was so remote and uncertain. I think your colleague agrees with you that the defense lawyer did not make the argument in a clear, coherent way so that the judge would understand what it was he was being asked to rule on. Your Honor, yes. But if I could just continue to the next point, though. Even if he had made the same argument, even if he made the argument he now claims he should have made, that wouldn't solve the problem of the remote and uncertain nature of the testimony. Because even a testimony that goes to state of mind must still be relevant in regards  It must be not remote and certain. So, explain how the state of mind evidence is not relevant to finding the defendant's belief was unreasonable and, therefore, sub you know, therefore, played into the second degree murder conviction. How was it not relevant? Because that's the underpinning of why he thought he was going to be shot. Because he knew this person to carry a gun in the past. He saw what he thought was a gun in the guy's waistband. Let me ask you this. What harm would it have been to allow that testimony had the proper argument been made? Your Honor, I can't answer the question of what harm it would have been because, again, I don't know how it would have come out. I don't know precisely what the testimony would have been, which is what I believe the trial judge is ruling to have been, is that you don't have enough specificity here to allow this to be admissible. That's exactly what your opponent is arguing, that the defense lawyer did not present it with sufficient specificity, coherence, and clarity for the trial judge to make a ruling that was based on the true argument, which is not propensity, but state of mind. Your Honor, with respect to that, I disagree that that's what my opponent's argument is because, yes, the opponent's argument is that the wrong legal argument was offered to the court for the admission. But what he isn't arguing is that more specificity was available to establish the admission of the evidence. He wasn't – he doesn't offer and cannot and does not challenge the fact that the offer of proof was rejected by the judge as being remote and uncertain. And that's the problem with this case, and that's why – But wasn't an offer of proof made? The closest to an offer of proof, as counsel stated during Nikita Robinson's testimony, there was effectively an offer of proof. We don't contest that. We do contest that there was a complete absence of offer of proof regarding the defendant's knowledge. Well, that's part of his complaint, that there should have been a clear offer of proof in the record as to what the testimony was going to be and what it would have established. And then we would have a record before us. Yes, Your Honor. So now you're telling me what you think the offer of proof was, but that – I don't know whether that's true or not. I'm sorry if I'm not making myself clear. What I'm trying to say is that the first instance in this case is whether or not the trial court abuses discretion based upon the evidence and information that was given to him. The defendant does not challenge that. There is no basis to find an abuse of discretion. Instead, counsel is arguing that his trial attorney was ineffective for failing to make a legal argument that they are now offering here, that in their mindset would have been more successful had they done that. The problem with that argument is that they don't offer any of the necessary additional proof, additional facts to establish why their evidence isn't remote and uncertain. And that's why, from an ineffectiveness standpoint, this is a very difficult case to make. But it's really – it's really not about whether it was remote or uncertain. It's about that it was only being looked at as propensity evidence, which under the circumstances that the defense counsel argued and that's all that the court looked at. And honestly, that's all you guys argued in your brief and said, no, it's not that. But as Justice Cunningham keeps saying, it's a more nuanced – which is also admissible. I mean, very clearly, and you never address the authorities that the defense raises like CJS, which says it's admissible to show that the homicide victim has a habit of carrying a dangerous weapon. It doesn't matter whether it's legal or illegal. It doesn't matter whether it's violent or not violent. I believe that you're a weapon-carrying guy, so when you come towards me, that's different than him, who's not a weapon-carrying guy. It's never addressed that way, whether it's specific or not specific. The defendant was barred from even testifying. I need you to be a weapon-carrying guy. And, Your Honor, the reason – and I believe we do address this in our brief – is that there was no basis for the premise of that testimony, meaning that the defendant hadn't established how he knew that, how it was not remote and uncertain, how it was just not speculation or conjecture. Well, you never – he never attempted to bring any of that out. That's part of your opponent's issue, that this lawyer was so inadequate and ineffective that he did not represent the defendant in a way that would have allowed him to put the argument before the trial court so that the trial court would have a basis for ruling as to whether it was admissible or not based on proper arguments. That's his argument, as I understand it. Yes, Your Honor, and I understand it to be that same way. And the problem with that argument here on direct appeal, the defendant – the hurdles that he has to overcome to be successful in that argument is, one, the presumption of competent representation that's the heart of Strickland. Two, the recognition in Strickland that attorneys can do things differently, and the fact that an appellate attorney or a later attorney representing the defendant will have a different view with the benefit of hindsight is not by itself proof that the original decision was an act. What possible trial strategy could it be to keep out the one piece of evidence that would allow the jury to understand why he thought he would be shocked, whether that belief was reasonable or unreasonable? What possible trial strategy can you point to that would make that all right? Your Honor, what I believe happens here – and again, I'm just speculating What I believe happens here is that the attorney was unable to establish with any more certainty what the basis of the defendant's knowledge was. And because he was unable to establish what the basis of the defendant's knowledge was Where do you get that? Your Honor, I believe from the midst of the sidebar during Nikita Robinson when he said That's about her knowledge. There's nothing about his knowledge in that sidebar. So then, Your Honor, you're absolutely correct. There is nothing about his knowledge in that sidebar, but that's the closest that we have. And so since that's the closest that we have, we can't speculate or presume that the defense attorney had more and chose not to raise it. Instead, the Strickland standard, the Strickland presumption is that you have to assume he knew what he was doing. He made proper choices. And that's why this is a difficult issue for direct appeal, because defendant's I have a better legal argument that could have been made below, but I don't know for certain that the attorney had all the facts available to him that I'm going to presume that he did, and therefore I'm entitled to release. That's really a question for post-conviction review, because what the attorney knew, what evidence he had available, what resources he was able to marshal at the trial really requires a discussion with the attorney. So let me ask you this question. I asked you before, but I don't know that you answered it. Assuming that the trial court had let this evidence in for the nuanced purpose of establishing the defendant's state of mind, what harm would that have caused? How would that have undermined the State's case? As we say in our brief, we don't believe that the defendant can show prejudice in this case that even had the attorney have done this. And I don't know that you answered my question. That's not what I asked you. I believe that that is the answer I have for you, is that the defendant in this appeal raising ineffective assistance has to prove prejudice, has to prove that the likelihood of the outcome being different. So you believe that if he had been allowed to put the evidence before the jury that the defendant was known to have the habit of carrying a gun and he saw what he thought was a gun in the defendant's waistband and then thought he was going to be shot, that that would have made no difference to the jury. Is that what you're saying? That's our argument, yes, Your Honor. Well, that's just as speculative. I mean, that's the corollary of what you're calling speculative. I recognize that. But, again, we don't have a burden under the Strickland standard. It's the defendant who has to prove that it would have been a different outcome. It's the defendant who has to point to the other weaknesses in the evidence and the other aspects of the case. And in this case, he can't do that because what the record shows was a very aggressive defense attorney trying to represent his client to the best of the ability under the facts, which included eyewitnesses, which included video, which included numerous aspects. It was contradictory. This was not as cut and dried as you would like to make it seem. There were witnesses. Some people, one witness testified that the victim was going toward the defendant. The other one testified that the victim was going away. I mean, there were differences here. So to say that it was, you know, a cut and dried eyewitness case, that's not exactly how I read the record. Your Honor, and I didn't say that there were no inconsistencies in the testimony because, as in every case, there are inconsistencies. Different witnesses have different viewpoints and see different things. There's always going to be a – and the jury is tasked with resolving those inconsistencies and addressing them. But the question is, again, under the rubric of an ineffective assistance of counsel, was this attorney – did he fail to meet the standards? The minimum standards as required by the Sixth Amendment to do what is necessary to defend the defendant based upon the facts and law before him, and were the alleged failures sufficient to deprive confidence in the outcome of the proceeding? It's our position that defendant doesn't establish either of those points. I have one more question for you. Let's assume that this – that this evidence had nothing to do with the victim's propensity for violence and, you know, and that – so it's not a lynching. Then what's the basis of excluding it? What's the other basis for excluding it if it's not – it's not being monitored for propensity? I'm going to go back to the nature of it being remote and uncertain evidence, it being speculative and conjectural, which is a prohibition on the admission of evidence within the rubric of the court's discretion to admit. The court has the authority to decide what is and what is not admissible, whether the evidence is being speculative or conjectural. And that's what happened here is the judge found, at least in regards to Nikita Robinson's proposed testimony, that there was not a sufficient basis. But the judge never considered it under the rubric of state-of-mind evidence. Isn't that correct? Yes, Your Honor. That was never mentioned to him in that area. But when the sidebar during Nikita Robinson's testimony, when the judge specifically asked what is the basis, what does she know, the defense attorney says she can't say when, but she may have seen him with a gun once. That's – without any more specifics, the judge found that wasn't clear enough, particularly, as the judge noted, it may have been legal. We don't know the circumstances of it. And so that's where the flaw in the defense argument is here, because the defendant to reach – to establish a claim of ineffective assistance that his attorney was so bad, failed to satisfy the Sixth Amendment minimum, that when the attorney can't and didn't offer any more specificity regarding what this testimony could have been, you cannot presume that their testimony would have been more clear, would have been more specific, and therefore his attorney was ineffective. That's why we're saying that the defendant hasn't made his claim. That's why we're saying that the failure to provide the specificity and the clarity required in an offer of proof would be – is what defeats the claim here on appeal, and that in the absence of any assertion that the trial judge abused his discretion at that moment, you can't even find a basis for error based upon this issue. And for those reasons – Before you sit down, can you answer the question about the autopsy report? Do you know if there was any discussion of the autopsy report by anybody at the trial? I don't remember there being any. And I tried to look after you asked your question before regarding the close-range firing. I couldn't find it in my – In the autopsy report? In my very quick look just now, but my recollection or my general knowledge about autopsy reports is that close-range firing has a different scientific meaning than what is used colloquially for close-range firing. Close-range firing typically talks about within 18 inches because it would develop something known as split-wing, maybe even less than 18 inches. So I don't remember precisely the facts of the case, but I do think that there is a distinction as is typical in most cases between lay testimony about what they see and scientific findings by an expert like a medical examiner or someone else regarding a particular term that are used. And so I'm not so certain, and I apologize for not being more accurate about this, but I'm not certain that there is any real discrepancy between those two, other than possibly a different understanding of terminology between a lay person and an expert. But if there is no further questions, we would ask this Court to reject the defendant's arguments and to affirm the defendant's conviction for first-degree murder. Thank you. Excuse me, Your Honors. To answer your question first, Your Honor, counsel in closing argument doesn't discuss a close-range fact-finding at all. That's T91 to T103. The autopsy is discussed starting at S196 to about 200 approximately. And I can't say the exact contents of what was read, but to respond directly to the prejudice argument that was raised that, you know, so what if all we talked about is what he knew about what he saw? It doesn't matter what he knew about his brother-in-law. I point to the Miller case that I cited. It was a case where a husband was accused of killing a wife, and he testified to having, you know, his wife was playing with a gun, and he grabbed it, and the gun went off, and it was an accident. And the state's argument was that, no, she had wanted to divorce him and told him the day before or something like that. And so the motive, of course, was going to be this, wanting to divorce. But the court didn't let the defendant testify that he wanted to divorce her two years prior, that he had thought about divorcing her. And that background information was exactly the missing piece to presenting a full and complete defense. And it wasn't saying, you know, we're not saying he's not guilty. We're not saying it was second degree. The prejudice was that he didn't get to present his full state of mind there. And similarly, the strategy discussion, you can't have a strategy that involves non-legal arguments or improper legal arguments. It's not a strategy to say, oh, he did it before, he did it again. The rules don't let me say that, but that's going to be my strategy for the evidence. That's not what attorneys that are, you know, making reasonable decisions do. And some of the argument about the offer of proof, the undevelopment of the record, I think at best that only defeats Robinson's testimony. You know, maybe it was speculative. Maybe it was distant. But she's his or she is his brother or his sister. She knows that the record itself provides the basis for what she knows about him. Was there any attempt to make an offer of proof with respect to having the defendant testify that he had had knowledge of the victim carrying a gun in the past? The counsel makes no attempt to do it. And the record itself, as I said before, this is his brother-in-law. At the appellate level, we understand where his knowledge would be coming from. There's no attempt for him to say, oh, I saw him yesterday with a gun or I knew that he was a gang member and carried a gun. One, he wasn't allowed to say that. But no, the counsel totally failed to give any offer of proof. The record, though, shows what Hamilton knew. How did he know he knew him to carry a gun? That's his personal knowledge. He knew him to carry a gun. We don't ask for a basis for things like in, say, Collins, there's a defense claim where he says, oh, I knew the victim was a pimp. We don't say, oh, how do you know this. You know, if you knew something, you knew it. This is not particularly speculative. It's not for the truth of the matter, certainly. Right. It's simply for a statement. Yes, just right. What were you thinking at the time? I was thinking, I know he carries a gun, and, you know, maybe he doesn't say belt buckle, but maybe it's his belt buckle. Maybe it's a ring on his finger. We don't know what it could have been, but there's something there that at least had Hamilton think that he saw a gun. But that's why I referred to it as the nuanced interpretation of offering that evidence, because many people think of that as propensity evidence, and in fact that's the road down which the State went, and the defense lawyer responded to that. Right. And the State is the one that directs that argument, essentially. You know, they say it's to dirty up the victim, and then counsel says, oh, you know, if he carried it before, he carried it now. You know, the defense counsel hit a roadblock, didn't have a backup. I couldn't find it in the record, but was there at any point in that exchange where the defense lawyer said that's not the basis on which I'm attempting to offer this evidence? I'm offering it to show the defendant's state of mind. Was that ever said anywhere? No. That never comes up at all. I think we wouldn't be standing here if it were. I know, but I have to ask you. Find somewhere else. It is the legal argument that we all want to use. I think I should be able to ask this question. Therefore, we ask you to reverse and remand. Anything else? No. Thank you. Thank you very much. Good job, as usual, for the offices. We will take this matter under advisement. This Court is now in recess.